USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/10/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
          :
UNITED STATES OF AMERICA   :   **SEALED INFORMATION**
          :
        - v. -    :   19 Cr. ___ (___)
          :
MICHAEL MORTIMER,   :   **19 CRIM 556**
          :
        Defendant.   :
          :
- - - - - - - - - - - - - - - - x

### COUNT ONE
**(Conspiracy to Commit Securities Fraud and
to Make False Filings with the SEC)**

The Attorney for the United States, acting under authority conferred by 28 U.S.C. § 515, charges:

### Background

1. At all times relevant to this Information, Brixmor Property Group ("Brixmor") was a publicly-traded real estate investment trust ("REIT") headquartered in New York, New York. Brixmor's securities traded under the symbol "BRX" on the New York Stock Exchange ("NYSE").

2. At all times relevant to this Information, MICHAEL MORTIMER, the defendant, held the position of senior vice president, management accounting at Brixmor.

3. At all times relevant to this Information, Brixmor was required to comply with the federal securities laws, which are designed to ensure that a company's financial information is accurately recorded and disclosed to the public. Specifically, at

all times relevant to this Information, pursuant to the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, Brixmor was required to: (a) file with the United States Securities and Exchange Commission (the "SEC") annual financial statements (on SEC Form 10-K) that had been audited by independent certified public accountants; (b) file with the SEC quarterly financial reports (on SEC Form 10-Q); and (c) make and keep books, records and accounts that accurately and fairly reflected Brixmor's business transactions.

4. Because Brixmor, like many REITs, generated profit and shareholder returns based on the performance of underlying real estate assets, at all times relevant to this Information, Brixmor measured its performance through metrics besides, or in addition to, traditional measurements of company performance calculated using Generally Accepted Accounting Principles ("GAAP").

5. For example, Brixmor, like many REITs, measured its performance through a non-GAAP measurement known as Same Store (or Same Property) Net Operating Income ("SS-NOI"). While SS-NOI can be expressed as an absolute number, it was also often expressed as a percentage to describe the relative increase (or decrease) in net operating income between the current reported period (the "Current Period") and the same period during the prior year (the "Comparison Period"), solely with respect to any properties owned by the REIT in both periods (i.e., the "Same Property Pool").

Because SS-NOI is calculated based solely on this Same Property Pool, it measures a REIT's success in generating growth through existing properties, as distinguished from growth resulting from the acquisition of new properties.

6. Each of Brixmor's 10-Qs and 10-Ks during the years 2013 through 2015 included a definition regarding how Brixmor calculated SS-NOI. This definition, which was also included in supplemental disclosures accompanying each 10-Q and 10-K, specifically excluded from the SS-NOI calculation lease termination, or lease settlement income ("LSI"), which is comprised of one-time payments a tenant makes for early termination of a lease.

7. While REITs such as Brixmor are not required to calculate or report non-GAAP metrics such as SS-NOI, Brixmor nonetheless reported SS-NOI in its periodic filings with the SEC and in related public disclosures to investors, as did other REITs. Indeed, SS-NOI was a key metric used by analysts and investors to evaluate a REIT's financial performance, including Brixmor's performance specifically.

### The Accounting Fraud Scheme

8. From at least in or about 2013 through at least in or about 2015, MICHAEL MORTIMER, the defendant, and certain other Brixmor executives not named as defendants herein, participated in an accounting fraud scheme in which they caused Brixmor to

report, in public filings with the SEC and to the investing public, fraudulently "smoothed," that is, falsely inflated and deflated, SS-NOI figures. Through the scheme, MORTIMER and others caused Brixmor to report these fraudulently smoothed SS-NOI figures to the investing public for the third quarter of 2013, and for each subsequent quarter up to and including the third quarter of 2015. MORTIMER and others caused Brixmor to report these fraudulently smoothed SS-NOI figures to the SEC and the investing public in order to ensure that the reported figures consistently fell within Brixmor's publicly announced SS-NOI guidance for the calendar year in which they were announced, and to fraudulently convey to the investing public that Brixmor was accomplishing predictable, consistent and stable growth quarter after quarter, as other Brixmor executives had falsely and publicly touted.

9. MICHAEL MORTIMER, the defendant, and others at Brixmor employed three principal means of manipulating SS-NOI performance figures in this manner:

    a. First, in quarters in which Brixmor generated more than enough income to meet the bottom, or in some cases middle, of its guidance range, it "stored" certain income instead of immediately recognizing it, a deceptive practice often referred to as "cookie jar" accounting. MORTIMER and others improperly stored income in a particular account of Brixmor's general ledger (the

4

"2617 Account"). In fact, the 2617 Account was referred to within Brixmor as, among other things, the "cookie jar" account and the income within it was referred to as, among other things, "boosts" and "stuff." When MORTIMER and others needed additional income to manipulate Brixmor's quarterly SS-NOI results, they would recognize income that previously had been improperly stored in the 2617 Account.

  b. Second, notwithstanding representations in Brixmor's SEC Filings and accompanying supplemental disclosures that LSI was not included in the calculation of SS-NOI, MORTIMER and others fraudulently included LSI in calculating SS-NOI in order to manipulate Brixmor's quarterly SS-NOI results.

  c. Third, in calculating SS-NOI for a given quarter, MORTIMER and others fraudulently removed income and/or properties from the prior relevant Comparison Period. Because SS-NOI is essentially a measure of the growth in revenue for a given set of properties between the Comparison Period and the Current Period, reducing the income from the Comparison Period or removing an underperforming property from the Same Property Pool has the impact of making the growth in revenue for the Current Period appear larger.

### Statutory Allegations

10. From in or about 2013 through at least in or about 2015, in the Southern District of New York and elsewhere, MICHAEL

5

MORTIMER, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit offenses against the United States, to wit, to commit securities fraud in connection with the purchase and sale of securities issued by Brixmor, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and to make and cause to be made false and misleading statements of material fact in applications, reports, and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, in violation of Title 15, United States Code, Sections 78m(a) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, and 244.100(b).

## Objects of the Conspiracy

11. It was a part and object of the conspiracy that MICHAEL MORTIMER, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b)

engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons; and (c) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

12. It was a further part and an object of the conspiracy that MICHAEL MORTIMER, the defendant, and others known and unknown, willfully and knowingly would and did make and cause to be made statements in reports and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material facts, in violation of Title 15, United States Code, Sections 78m(a) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, and 244.100(b).

**Overt Acts**

13. In furtherance of the conspiracy and to effect its illegal objects, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

   a. On or about May 4, 2015, MICHAEL MORTIMER, the defendant, sent an email to subordinates at Brixmor requesting that they recognize certain income and noting that "it doesn't

matter which property or properties" the income was recognized from.

(Title 18, United States Code, Section 371.)

### COUNT TWO
### (Securities Fraud)

The Attorney for the United States, acting under authority conferred by 28 U.S.C. § 515, further charges:

14. The allegations contained in paragraphs 1 through 9, and paragraph 13, are repeated and realleged as though fully set forth herein.

15. Between in or about 2013 and in or about 2015, in the Southern District of New York and elsewhere, MICHAEL MORTIMER, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons; and (c) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading, to wit, MORTIMER engaged in a scheme to mislead the shareholders of Brixmor and the investing public by fraudulently manipulating the reported figures for SS-NOI in order to provide a false impression that Brixmor was accomplishing predictable, consistent, and stable growth from quarter to quarter.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5 and 244.100(b); and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

16. As a result of committing one or more of the offenses alleged in Counts One and Two of this Information, MICHAEL MORTIMER, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

## Substitute Asset Provision

17. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

circumstances under which they were made, not misleading, to wit, MORTIMER engaged in a scheme to mislead the shareholders of Brixmor and the investing public by fraudulently manipulating the reported figures for SS-NOI in order to provide a false impression that Brixmor was accomplishing predictable, consistent, and stable growth from quarter to quarter.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5 and 244.100(b); and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

16. As a result of committing one or more of the offenses alleged in Counts One and Two of this Information, MICHAEL MORTIMER, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

## Substitute Asset Provision

17. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

  (Title 18, United States Code, Section 981;
  Title 21, United States Code, Section 853;
  Title 28, United States Code, Section 2461.)

_Audrey Strauss_
AUDREY STRAUSS
Attorney for the United
States, Acting Under Authority
Conferred by 28 U.S.C. § 515

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

v.

**MICHAEL MORTIMER,**

                      **Defendant.**

---

**SEALED INFORMATION**

19 Cr. \_\_\_\_

(15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R.
§§ 240.10b-5 & 244.100(b); and 18
U.S.C. §§ 371 & 2.)

AUDREY STRAUSS
Attorney for the United States
Acting Under Authority Conferred
By 28 U.S.C. § 515

---

7/10/2019 - Initial Appearance and Arraignment held. Time in Court: 1 hour

Defendant present with attorneys Jerry Bernstein and Nicholas Tambone. AUSA Martin Bell present. Postal Inspector Diana Chau present. Court Reporter present. Waiver of Indictment signed. Defendant arraigned on the Information and enters a plea of guilty as charged. Court accepts plea. Control date for sentencing set for 1/13/2020, at 2:00 p.m. No PSR Ordered. Defendant released ROR.